GREYHOUND LINES, INC., et al.,
Plaintiffs,

v.

PUBLIC SERVICE COMMISSION of Utah
et al., Defendants.

LEWIS BROS. STAGES, INC., a corporation, Plaintiff,

v.

PUBLIC SERVICE COMMISSION of Utah
et al., Defendants.

Nos. 14187, 14210.

Supreme Court of Utah.

March 8, 1976.

Stuart L. Poelman of Worsley, Snow & Christensen, Salt Lake City, for Greyhound Lines.

Irene Warr of Cotro-Manes, Warr, Fankhauser, & Beasley, Salt Lake City, for Lewis Bros.

Vernon B. Romney, Atty. Gen., Clair J. Jaussi, Sp. Asst. Atty. Gen., Salt Lake City, for Public Service Com'n.

John Paul Kennedy of Boyden, Kennedy, Romney & Howard, Salt Lake City, for Utah Valley and Cook Transp. Co.

Ramon M. Child, Salt Lake City, for Lake Shore.

MAUGHAN, Justice:

On appeal is an order of the Public Service Commission allowing Utah Valley Transit and Cook Transportation, each, to purchase one-half the stock in Lake Shore Lines. A hearing was had, the protestants (plaintiffs) participating. Utah Valley and Cook were found to be fit, and the sale to be in the public interest. Plaintiffs petition pursuant to 54–7–16. We affirm the Commission. All statutory references are to U.C.A.1953, as amended.

Utah Valley Transit holds intrastate authority to originate charter operations at Provo and at points between Santaquin and Springville, Utah. Cook Transportation has intrastate authority to initiate charter trips at points in Cache County and has interstate authority to originate charter trips at Logan, Brigham City, and Ogden, Utah, to specific destinations in the western United States. Lake Shore holds intrastate authority for charter round trips originating at points from Ogden to Salt Lake City, inclusive.

Plaintiffs hold various interstate and intrastate authority to originate charter trips from Salt Lake City and Ogden.

The stock in Lake Shore is presently owned by the estate of John H. Yeaman. The executor, pursuant to an agreement with Utah Transit Authority, a public entity (U.T.A., hereinafter), transferred its regular route passenger authority with reservation. Lake Shore and U.T.A. have agreed that Lake Shore would retain whatever regular route authority would be necessary to support its charter rights. Lake Shore specifically agreed to limit the schedules it operated pursuant to its regular route authority to times and places not in conflict with the schedules the U.T.A. may in its discretion operate.

The Commission found the applicants had operated successfully for many years in this state, and had the financial capability to operate Lake Shore; Lake Shore would be managed by experienced personnel with adequate equipment, garage and office facilities located in Salt Lake City; Lake Shore had been successfully and lawfully operated by the applicants, under temporary authority, since August 1, 1974. It also found there were no other purchasers willing to acquire the stock; and if the sale were not approved, the executor would be required to continue to operate the service. A further finding was:

'Splitting' of the Lake Shore Authority in the manner proposed in the instant application will not result in the creation of any new transportation authorities nor diversion of traffic from any of protestants except to the extent the new owners and managers of Lake Shore

may be more agressive and efficient. Any increase in the competency of Lake Shore management is clearly in the public interest.

Plaintiffs contend the order of the Commission exceeded its lawful authority. They argue the order had the effect of allowing three carriers to conduct the charter operations for which only one carrier had applied and received a certificate authorizing such operations. A further claim is that a new carrier cannot enter into the market without receiving a certificate of convenience and necessity in compliance with Section 54–6–5. They urge that the Commission's order was unlawful because it was not based upon any showing of public convenience and necessity; yet it had the effect of granting the charter authority which was previously Lake Shore's to two other carriers. It is also asserted the effect of the order is to bypass Section 54–6–5, and establish a new authority and new competition without requiring a showing of public convenience and necessity.

Another claim is the two carriers, through their stock ownership, will control Lake Shore; then through equipment leases will use Lake Shore's authority as a vehicle to expand operations into Davis and Salt Lake Counties, thus attempting a new operation not possible under their present grant of authority.

Plaintiffs completely ignore the transaction as approved by the Commission and treat it as a transfer and division of the operating rights of Lake Shore. Their entire argument is predicated on the false assumption that Lake Shore is a dummy, paper corporation without an independent existence under the close supervision and control of the Public Service Commission.

To sustain plaintiffs' argument, it would be necessary to find that an equipment lease is comparable to a partial transfer of operating rights and further a device to divide and expand a single authority into multiples. No authority is cited to sustain this argument.

Evidence was adduced in an attempt to show applicants had abused lease operations during the time they had operated Lake Shore under a temporary permit. The Commission specifically found applicants had lawfully operated Lake Shore.

Section 54–4–29, provides no public utility shall purchase or acquire any of the voting securities of any other public utility engaged in the same general line of business, without the consent and approval of the Public Service Commission, which shall be granted only after investigation and hearing, and finding such purchase and acquisition to be in the public interest.

The legislature has thus expressly permitted a carrier to acquire another's voting stock, if such a transaction is found by the Commission to be in the public interest. The effect of the control of Lake Shore, by the two applicants, and the use of equipment leases are peculiarly within the special knowledge and expertise of the Commission, and its finding and order are presumed correct. We will sustain the findings and order of the Commission, unless they must be deemed capricious and arbitrary.[1]

The further contention that the order permits severance of incidental charter rights from regular route authority is without merit, since the findings expressly state Lake Shore will provide regular route service as required, in the absence of complete service by U.T.A. The assertion that the splitting of the regular route authority is illegal is predicated on the decisions and regulations of the Interstate Commerce Commission. It is not shown that the Public Service Commission has established a similar policy. Since by the alleged splitting of the regular route authority, the sum total of the parts does not exceed the

---

1. *Lewis v. Wycoff*, 18 Utah 2d 255, 420 P.2d 264 (1966).

whole out of which they were derived, the order of the Commission cannot be deemed as creating a new transportation authority subject to the requirements of Section 54–6–5.

HENRIOD, C. J., and ELLETT, CROCKETT and TUCKETT, JJ., concur.